Heidi G. Goebel (Bar No. 10343)
GOEBEL ANDERSON PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
hgoebel@gapclaw.com

Rachael M. Trummel (admitted *pro hac vice*)
Andrew J. Chinsky (admitted *pro hac vice*)
KING & SPALDING LLP
353 North Clark Street, 12th Floor
Chicago, Illinois 60654
Telephone: (312) 764-6907
rtrummel@kslaw.com
achinsky@kslaw.com

*Attorneys for Defendant Shopify Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| PARCEL PARTNERS, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SHOPIFY INC., a Canadian company,<br><br>Defendant. | Case No. 2:20-cv-00253-DB<br><br>DEFENDANT SHOPIFY INC.'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT<br><br>Honorable Dee Benson |

**TABLE OF CONTENTS**

INTRODUCTION, SUMMARY OF RELIEF SOUGHT, & GROUNDS FOR MOTION .......... 1

BACKGROUND ..................................................................................................... 4

    I.      The Parties. .....................................................................................4

    II.     The Agreement..................................................................................5

    III.    Shopify Enters into NSA with USPS and Moves Its Clients to Its Own NSA……...............................................................................................8

    IV.    This Dispute..................................................................................8

STANDARD OF REVIEW ......................................................................................... 9

ARGUMENT ............................................................................................................ 11

    I.      Section 1.E. Does Not Prohibit Shopify from Offering Discounted USPS Domestic Shipping Rates to Its Clients Under Shopify's Own NSA with USPS..................................................................................................12

    II.     Section 2.E. Does Not Support Plaintiff's "Exclusivity"-Premised Theory of Breach.........................................................................................14

    III.    Section 10B Does Not Support Plaintiff's "Exclusivity"-Premised Theory of Breach.........................................................................................16

CONCLUSION.......................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Bennett v. PHH Mortg. Corp.*,
   No. 2:14-CV-316 TS, 2014 WL 3510200 (D. Utah July 14, 2014) .................................10, 11

*Best Rate Towing & Repair, Inc. v. Ziplocal, L.P.*,
   No. 2:11CV345DAK, 2012 WL 627668 (D. Utah Feb. 24, 2012)....................................10, 13

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006).........................................................................................................7

*BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*,
   830 F.3d 1195 (10th Cir. 2016) .................................................................................................13

*Green River Canal Co. v. Thayn*,
   84 P.3d 1134 (Utah 2003)..........................................................................................................15

*Kripp v. Kripp*,
   849 A.2d 1159 (Pa. 2004).........................................................................................................13

*Lenau v. Co-eXprise, Inc.*,
   102 A.3d 423 (Pa. Super. Ct. 2014)....................................................................................13, 15

*Olpin v. Ideal Nat'l Ins. Co.*,
   419 F.2d 1250 (10th Cir. 1969) .................................................................................................10

*Pliuskaitis v. USA Swimming, Inc.*,
   243 F. Supp. 3d 1217 (D. Utah 2017).....................................................................................7, 9

*Resolution Tr. Corp. v. Fed. Sav. & Loan Ins. Corp.*,
   25 F.3d 1493 (10th Cir. 1994) ............................................................................................12, 13

*Rutherford ex rel. Rutherford v. Talisker Canyons Fin. Co., LLC*,
   333 P.3d 1266 (Utah Ct. App. 2014) ........................................................................................11

*Telwell Inc. v. Grandbridge Real Estate Capital, LLC*,
   143 A.3d 421 (Pa. Super. Ct. 2016)..........................................................................................11

*Toone v. Wells Fargo Bank, N.A.*,
   716 F.3d 516 (10th Cir. 2013) ...................................................................................................10

*ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*,
   No. 2:14-CV-72, 2014 WL 6607280 (W.D. Pa. Nov. 19, 2014)...............................................10

**Statutes & Rules**

Fed. R. Civ. P. 10(c)...................................................................................................10

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 4, 9

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1327 (4th ed. 2020)..............................................................................................10

Restatement (Second) of Contracts § 212......................................................................10

## INTRODUCTION, SUMMARY OF RELIEF SOUGHT, & GROUNDS FOR MOTION

In its one-count complaint against Defendant Shopify Inc. ("Shopify"), Plaintiff Parcel Partners, LLC ("Plaintiff") attempts to state a breach of contract claim against Shopify based on a purported "exclusivity" provision of an agreement that (1) makes no reference whatsoever to "exclusivity" and (2) expressly excludes Shopify from the very provision of the agreement on which Plaintiff relies.  As demonstrated below, the plain language of the agreement refutes Plaintiff's theory of breach, so Plaintiff's claim necessarily fails as a matter of law and should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In the Complaint, Plaintiff alleges that it entered into a Referral Agreement ("Agreement") with Shopify on April 1, 2017, whereby Plaintiff agreed to offer Shopify discounted shipping rates pursuant to Plaintiff's Negotiated Service Agreement ("NSA") with the United States Postal Service ("USPS").  Plaintiff alleges that, under the Agreement, it sold its discounted USPS shipping rates to Shopify's merchant clients ("Clients").  Plaintiff further alleges that Shopify breached the Agreement by entering into its own NSA to obtain domestic shipping rates directly from USPS and, beginning on or about February 21, 2020 (a little over one month before the natural expiration of the Agreement),[1] moving its Clients to its own NSA rather than continuing to refer them to Plaintiff.

Plaintiff's theory of breach depends on the existence of an "exclusive" relationship between Plaintiff and Shopify with the respect to the offer of discounted USPS domestic shipping rates—a purported "exclusive" relationship that exists only in Plaintiff's imagination and is flatly

---

[1] The Agreement provided for an initial one-year term and two additional one-year renewal terms such that it expired on March 31, 2020 (three years after the Effective Date).  (Agreement § 8.)

refuted by the plain language of the Agreement.  Put simply, while the Agreement prohibited Shopify from offering its Clients discounted USPS domestic rates *from any "Competing Reseller,"* as explained below, the Agreement expressly excluded Shopify from the definition of "Competing Reseller."  As a result, nothing in the Agreement prohibited Shopify from entering into its own NSA with USPS and (having obviated the need for Shopify to rely on any third-party reseller of discounted USPS shipping rates, whether Plaintiff or any of Plaintiff's Competing Resellers) offering its Clients discounted USPS domestic shipping rates based on its own NSA.

In the Complaint, Plaintiff cites the following three provisions of the Agreement in ostensible support of its "exclusivity" theory of breach: Section 1.E., Section 2.E., and Section 10B.  But, as shown below, Plaintiff's reliance on these provisions is entirely misplaced because, based on their plain language, none of these provisions supports any breach by Shopify.

As to Section 1.E., Plaintiff alleges that an "exclusive" relationship arose because the Agreement prohibits Shopify from offering rates obtained from a "Competing Reseller"—but the definition of "Competing Reseller" in Section 1.E. explicitly excludes Shopify.  Plaintiff attempts to avoid this explicit exclusion by asserting that the Agreement's supposedly "broad definition of 'Competing Reseller' encompasses two categories of resellers: (1) resellers of USPS rates, similar to [Plaintiff's] relationship to [Shopify] under the Agreement, and (2) other parties that offer shipping rates pursuant to a reseller's NSA."  (Cmplt. ¶ 20.)  Plaintiff's assertion is simply not true.  The definition of "Competing Reseller" in the Agreement is not broad and it does not encompass two categories of reseller.  Section 1.E. defines a "Competing Reseller" simply as "a third party, *other than Referral Source [Shopify]*, that offers shipping rates under [NSAs] directly with the USPS for domestic or international rates."  (Agreement § 1.E. (emphasis added).)  Thus,

Section 1.E. only prohibited Shopify from offering discounted USPS domestic shipping rates from **_Competing Resellers (excluding Shopify)_**—that is, _third-party_ resellers of discounted USPS domestic shipping rates that Shopify could otherwise contract with instead of Plaintiff.  But Section 1.E. did not prohibit Shopify from offering its own Clients discounted USPS domestic shipping rates based on its own NSA with USPS.  Because Section 1.E. expressly carves out Shopify from the definition of "Competing Reseller," as a matter of law, Plaintiff cannot make out any claim of breach based on Section 1.E. (on which Plaintiff's breach of contract claim entirely depends).

Plaintiff holds Section 2.E. out as an example showing the purported existence of an "exclusive" relationship between Plaintiffs and Shopify for the provision of discounted USPS domestic rates to Shopify's Clients.  Contrary to Plaintiff's vague assertion, Section 2.E. simply confirms that the parallel prohibition of Section 1.E.[2] (that is, Shopify's agreement not to offer its Clients discounted domestic USPS shipping rates **_from other Competing Resellers_**) does not apply to rate categories not covered by the Agreement (like international rates).  As such, Section 2.E. also cannot support Plaintiff's breach of contract claim.

As to Section 10B, Plaintiff asserts that the Termination for Convenience provision "would be unnecessary if no exclusive relationship existed between [Shopify] and [Plaintiff] for offering domestic shipping rates, as [Shopify] could slowly move its domestic volume off of [Plaintiff's] NSA without consequence."  (Cmplt. ¶ 31.)  But Plaintiff's assertion is plainly incorrect.  For example and most obviously, the Termination for Convenience provision would apply if Shopify

---

[2] Section 1.E. of the Agreement lists the "responsibilities" to which "Referral Source [Shopify] Agrees."  Section 2.E. lists the parallel "responsibilities" to which "Company [Plaintiff] Agrees."

decided to terminate the Agreement so that Shopify could offer its Clients discounted domestic USPS shipping rates *from a Competing Reseller* (because that reseller offered better rates than Plaintiff or for any other reason) without implying the "exclusivity" that Plaintiff seeks to impose on the Agreement. As a result, Section 10B does not support the existence of the "exclusivity" obligations on which Plaintiff's claim depends.

In sum, Plaintiff's claim fails because it is unsupported by the plain language of the Agreement. If the Parties had intended for the Agreement to create an "exclusive" relationship, they could easily have said so. They did not. If the Parties had intended for the Agreement to prohibit Shopify from entering into its own NSA with USPS, they could easily have said so. They did not. Instead, as reflected in the plain language of the Agreement, the Parties agreed that Shopify was not a "Competing Reseller" under Section 1.E.—the provision of the Agreement on which Plaintiff's claim depends. Accordingly, Shopify was free under the Agreement to take the very actions that Plaintiff claims constitute a breach. Shopify respectfully moves to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has not pled, and cannot plead, facts to plausibly show any breach of the Agreement by Shopify.

## BACKGROUND[3]

### I.     The Parties.

1.     Plaintiff is a limited liability company organized under the laws of the State of Utah,

---

[3] Shopify assumes the truth only of the well-pled allegations of the Complaint and only for purposes of this motion. Shopify does not assume the truth of allegations that are refuted by the plain language of the Agreement that is the subject of the Complaint.

and with its principal place of business in Salt Lake City, Utah.  (Cmplt. ¶ 1.)

2.      Plaintiff is a party to an NSA with USPS pursuant to which Plaintiff offers its customers discounted USPS shipping rates.  (*Id.* ¶ 11.)

3.      Shopify is a Canadian corporation organized under the laws of Canada, and with its principal place of business in Ottawa, Ontario, Canada.  (*Id.* ¶ 4.)

4.      Shopify is an e-commerce company that provides its Clients with software to build online and mobile storefronts from which to sell their products and services.  (*Id.* ¶ 9.)  Shopify's platform also provides its Clients with payment processing and order shipping support (although not all of Shopify's Clients take advantage of all such services).  (*Id.* ¶ 10.)

## II.      The Agreement.

5.      On or about April 1, 2017, Plaintiff and Shopify entered into the subject Agreement—that is, the Referral Agreement, attached as Exhibit A to the Complaint—whereby Plaintiff agreed to offer Shopify discounted USPS domestic and international shipping rates in exchange for a per-shipping-label-fee for each qualifying shipping label purchased under the Agreement.  (Cmplt. ¶ 12; Agreement § 3 (Payment and Reporting Obligations).)

6.      Section 1 of the Agreement identifies the "responsibilities" to which Shopify agreed by entering into the Agreement.  Plaintiff's claim necessarily depends on Section 1.E., which is the only provision that purports to *in any way* limit Shopify's right to offer alternative discounted USPS domestic shipping rates to its Clients.  Section 1.E. states as follows:

> Where the domestic rates offered by [Plaintiff] pursuant to Exhibit B are discounted off the USPS' [*sic*] publically [*sic*] available domestic rates, [Shopify] will not offer [its] Clients any alternative domestic rate offer **from a Competing Reseller**.  A "Competing Reseller" is a third party, **other than [Shopify]**, that offers shipping

rates under negotiated service agreements directly with the USPS for domestic or international rates.

(Agreement § 1.E. (emphasis added).)

7.      Section 2 of the Agreement identifies the "responsibilities" to which Plaintiff agreed in entering into the Agreement.  Section 2.E.—the parallel provision to Section 1.E. (which identifies Shopify's "responsibilities")—states as follows:

> [Plaintiff] acknowledges and agrees that [Shopify] may offer Clients competing products and offerings from Competing Resellers, or directly from the USPS, for (i) international USPS rates, (ii) international USPS rates that include a USPS domestic rate as a component of the international USPS rate, (iii) domestic USPS rates on first class parcels.  [Plaintiff] further acknowledges and agrees that Clients may have independently negotiated domestic and/or international offers from Competing Resellers.

8.      Although not mentioned in the Complaint, the Agreement includes a Limitation of Liability provision, which provides, in relevant part, as follows:

> EXCEPT WITH RESPECT TO A PARTY'S INDEMNIFICATION OBLIGATIONS OR BREACH OF CONFIDENTIALITY OBLIGATIONS, **IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INCIDENTAL, THIRD PARTY (EXCEPT TO THE EXTENT PROVIDED IN SECTION 12 [INDEMNIFICATION OF SHOPIFY BY PLAINTIFF]), INDIRECT OR CONSEQUENTIAL DAMAGES OR FOR THE LOSS OF PROFIT, REVENUE, OR BUSINESS,** EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH POTENTIAL LOSS OR DAMAGE.  **IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR DIRECT DAMAGES IN CONNECTION WITH THIS AGREEMENT FOR AN AMOUNT GREATER THAN THE GREATER OF: (A) ONE HUNDRED THOUSAND DOLLARS ($100,000); AND (B) THE AMOUNT PAID OR PAYABLE BY THE BREACHING PARTY TO THE NON-BREACHING PARTY UNDER THE AGREEMENT IN THE TWELVE (12) MONTHS PRECEDING THE EVENT GIVING RISE TO THE LIABILITY**.  THE LIMITATIONS APPLY TO ALL CAUSES OF ACTION IN THE AGGREGATE, INCLUDING WITHOUT LIMITATION BREACH OF CONTRACT . . . .

(*Id.* § 13 (emphasis added).)

6

9.      The Agreement included a "Governing Law" provision which provides that (1) the Agreement is governed by Pennsylvania law, (2) the Parties waive any right to a jury trial, and (3) in an action to enforce the Agreement, the prevailing party will be entitled to its reasonable costs and attorneys' fees.  (Cmplt. ¶ 14; Agreement § 15.)

10.     The Agreement provides for an initial term of one year and (absent proper notice of non-renewal) two successive one-year renewal terms, making the total term of the Agreement three years from the April 1, 2017 Effective Date.  (Agreement § 8.)  Accordingly, the Agreement expired on March 31, 2020.  (Cmplt. ¶¶ 15, 33; Agreement § 8.)

11.     On January 26, 2018, the Parties entered into the First Amending Agreement (Plaintiff did not attach the First Amending Agreement to its Complaint, so Shopify attaches it here as Ex. C), which changed the date by which a party had to provide notice of its intent not to renew after the first one-year term from sixty days to thirty days prior to expiration.  *See* First Amending Agreement § 2(a), attached as Ex. C.[4]

12.     On April 1, 2019, the Parties entered into the Second Amending Agreement (attached as Exhibit B to the Complaint), which amended the Agreement to add the following Termination for Convenience provision as Section 10B of the Agreement:

> **Termination for Convenience**.  [Shopify] may terminate this Agreement for convenience upon at least ninety (90) days advance written notice to [Plaintiff].  In the event [Shopify] exercises its right to terminate for convenience pursuant to this Section 10B, [Shopify] agrees to provide [Plaintiff] with a lump sum payment equal

---

[4] The First Amending Agreement is referenced in the Second Amending Agreement, which Plaintiff did attach to the Complaint, so the Court may consider the First Amending Agreement in connection with a motion to dismiss under the "incorporation by reference" doctrine.  *See* Second Amending Agreement at 1; *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1223 (D. Utah 2017), *aff'd sub nom*. *Pliuskaitis v. USA Swimming*, 720 F. App'x 481 (10th Cir. 2018).

to six hundred and fifty thousand dollars ($650,000) (the "**Termination Payment**"). If applicable, [Shopify] will pay [Plaintiff] the Termination Payment at least thirty (30) days prior to the date the Agreement is terminated. The Parties intend that the Termination Payment constitute compensation, and not a penalty. [Shopify's] payment of the Termination Payment is [Shopify's] sole liability and entire obligation and [Plaintiff]'s exclusive remedy for any termination arising pursuant to this Section 10B.

(Cmplt. ¶¶ 29-30; Second Amending Agreement § 2(a).) The only time the word "exclusive" appears in the Agreement is in the Termination for Convenience provision added two years after the Effective Date of the Agreement. (Second Amending Agreement § 2(a).) Even then, the word "exclusive" does not refer to the relationship between Plaintiff and Shopify; it refers only to the fact that the Termination Payment is Plaintiff's "*exclusive* remedy for any termination arising pursuant to this Section 10B."

## III.  Shopify Enters into NSA with USPS and Moves Its Clients to Its Own NSA.

13.     On February 3, 2020 (less than two months before the March 31, 2020 expiration of the Agreement), Shopify informed Plaintiff that it had entered into an NSA of its own with USPS for discounted USPS domestic shipping rates. (Cmplt. ¶ 32.)

14.     Thereafter, on or about February 21, 2020 (just over a month before the March 31, 2020 expiration of the Agreement), Shopify moved its Clients from Plaintiff's rate platform to Shopify's own USPS rate platform for discounted USPS domestic shipping rates. (*Id*. ¶ 33.)

## IV.   This Dispute.

15.     On or about March 6, 2020, Plaintiff notified Shopify of its (incorrect) position that Shopify's actions "were a breach of the exclusivity provisions of the Agreement." (*Id*. ¶ 35.) As demonstrated herein, the Agreement does not contain any exclusivity provisions.

16.     On April 16, 2020, Plaintiff filed the Complaint in this action, claiming that Shopify breached the Agreement by entering into its own NSA with USPS and then, beginning on February 21, 2020 (only thirty-nine days before the expiration of the Agreement), moving its Clients from Plaintiff's platform to Shopify's own discounted USPS domestic shipping rate platform.

17.     Plaintiff seeks damages in an amount not less than $5,000,000, but offers no factual allegations whatsoever to support entitlement to damages (even assuming breach—and there is none) in that amount.[5]

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"    *Pliuskaitis*, 243 F. Supp. 3d at 1223 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   The court is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Pliuskaitis,* 243 F. Supp. 3d at 1223 (internal citation omitted).

---

[5] Although beyond the scope of this Rule 12(b)(6) motion, Shopify notes that Plaintiff asserts without any factual support that it has suffered damages "in an amount to be determined at trial, but, in any event, no less than $5,000,000."   (Cmplt. ¶ 43.)   Given the Limitation of Liability provision (including the bar on recovery for "indirect or consequential damages or for the loss of profit" and the comparatively small amount paid or payable to Shopify under the Agreement in the twelve-month period preceding), the mere thirty-nine-day purported "breach" period, and the Termination for Convenience provision, Shopify submits that there can be no good faith basis for Plaintiff's allegation that it is entitled to damages in an amount anywhere close to $5,000,000, even if its theory of liability were not fatally flawed.

"When evaluating a motion to dismiss, the Court considers not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Bennett v. PHH Mortg. Corp.*, No. 2:14-CV-316 TS, 2014 WL 3510200, at *2 (D. Utah July 14, 2014); *see also* Fed. R. Civ. P. 10(c). Particularly relevant in a breach of contract action, "[i]f there is any dispute between the allegations in the complaint and the attached exhibits, the exhibits control." *Bennett*, 2014 WL 3510200, at *2; *see also ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, No. 2:14-CV-72, 2014 WL 6607280, at *5 (W.D. Pa. Nov. 19, 2014); ("It is well settled that where a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true any contradictory allegations in the complaint.").[6] "When the terms of a contract are clear and unambiguous, the court may interpret the contract and enter judgment as a matter of law." *Best Rate Towing & Repair, Inc. v. Ziplocal, L.P.*, No. 2:11CV345DAK, 2012 WL 627668, at *2 (D. Utah Feb. 24, 2012); *see also* Restatement (Second) of Contracts § 212 cmts. d & e (1981)).

In this case, Plaintiff's sole claim is for breach of contract.[7] The elements of a breach of contract claim under Utah law are: "(1) a contract, (2) performance by the party seeking recovery,

---

[6] *See also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013); (where the "face" of the document "contradicts the [plaintiff's] allegations," courts are to follow the plain language of the document); *Olpin v. Ideal Nat'l Ins. Co.*, 419 F.2d 1250, 1255 (10th Cir. 1969); (courts are not "bound to accept mere legal conclusions or factual claims at variance with the express terms of the [document], itself"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (4th ed. 2020) ("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.").

[7] As noted above, the Agreement includes a "Governing Law" provision that states that Pennsylvania law governs (despite having no apparent connection to the Parties, the Agreement, or this dispute). (Agreement § 15; Cmplt. ¶ 14.) Under Utah's choice-of-law rules, which apply

(3) breach of the contract by the other party, and (4) damages." *Bennett*, 2014 WL 3510200, at \*3. Likewise, under Pennsylvania law, to maintain a breach of contract claim, "a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 427 (Pa. Super. Ct. 2016); (alteration removed) (citing *Lackner v. Glosser*, 892 A.2d 21, 24 (Pa. Super. Ct. 2006)).  In short, both Utah and Pennsylvania law require that a plaintiff plead facts sufficient to plausibly support each element of its claim—which, as explained below, Plaintiff has entirely failed to do with respect to the essential element of breach.

## ARGUMENT

Plaintiff has not pled, and cannot plead, facts to plausibly show that Shopify breached the Agreement—in particular, Section 1.E., the only provision that could possibly apply—when it entered into its own NSA with USPS and subsequently moved its Clients from Plaintiff's platform to Shopify's own platform for discounted USPS domestic shipping rates.

---

to this Court sitting in diversity, the Court must determine whether two or more states have an interest in the determination of this case, analyze whether Pennsylvania has a "substantial relationship to the parties or the transaction," and analyze if there is a "reasonable basis for the parties' choice."  *Rutherford ex rel. Rutherford v. Talisker Canyons Fin. Co., LLC*, 333 P.3d 1266, 1273-74 (Utah Ct. App. 2014) (internal citation omitted).  If there is no such relationship or reasonable basis, the Court may disregard the "Governing Law" provision in the Agreement.  *Id.*  For the limited purposes of this motion, however, the elements of a breach of contract claim under Pennsylvania law and Utah law are substantially the same (including that both require an actual breach, which does not exist here), so the Court need not engage in the conflict-of-laws analysis to decide this motion.

I.   **Section 1.E. Does Not Prohibit Shopify from Offering Discounted USPS Domestic Shipping Rates to Its Clients Under Shopify's Own NSA with USPS.**

Plaintiff's breach of contract claim depends on its allegation that the Agreement gave rise to an "exclusive" relationship between Plaintiff and Shopify for the offer of discounted USPS domestic shipping rates to Shopify's clients.   But the plain language of the Agreement does not support the existence of any such exclusive relationship.   Plaintiff's strained-beyond-recognition interpretation of Section 1.E. as creating any such relationship is "baseless" and "conflicts with a common-sense reading of the language."   *Resolution Tr. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1500 (10th Cir. 1994).

*First*, the plain language of Section 1.E. simply does not permit the construction that Plaintiff proposes.   At most, the plain language of Section 1.E. simply prohibits Shopify from offering its Clients "any alternative domestic rate offer ***from a Competing Reseller***."   (Agreement §1.E. (emphasis added); *see* Cmplt. ¶ 17.)   But Section 1.E. then specifically carves out Shopify from the definition of "Competing Reseller": "A 'Competing Reseller' is a third party, ***other than [Shopify]***, that offers shipping rates under [NSAs] directly with the USPS for domestic or international rates."[8]   (Agreement §1.E. (emphasis added); *see* Cmplt. ¶¶ 17-18.)   This language is clear: Section 1.E. prohibited Shopify from offering its Clients alternative discounted USPS domestic shipping rates ***from Competing Resellers***, but, because Competing Resellers are third

---

[8] As noted above, Plaintiff falsely asserts that an "exclusive relationship arises [from Section 1.E.] because the broad definition of 'Competing Reseller' encompasses two categories of resellers: (1) resellers of USPS rates, similar to Parcel Partners' relationship to [Shopify] under the Agreement, and (2) other parties that offer shipping rates pursuant to a reseller's NSA."   (Cmplt. ¶ 20.)   But again, "Competing Reseller" does not encompass "two categories" of resellers.   There is only one category, and that category expressly excludes Shopify.   Moreover, even if there were "two categories" of resellers (and there are not), Shopify would be excluded from *both* categories.

parties, and further because Shopify was expressly excluded from the definition of Competing Reseller, Section 1.E. did not prohibit Shopify from offering its Clients alternative discounted USPS domestic shipping rates from Shopify's own NSA with USPS.

*Second*, if the Parties had intended for the Agreement to prohibit Shopify from entering into its own NSA with USPS (whether for discounted USPS domestic shipping rates or any other category of rates), they "could easily have" added such a provision, and the Court should not "torture the language to reach such a result." *Resolution Tr. Corp.*, 25 F.3d at 1500. Under Utah law, courts must not rewrite the terms of a contract. *Best Rate Towing & Repair, Inc.*, 2012 WL 627668, at *4 ("The court cannot rewrite the terms of the contract to make it more favorable for one side. The parties are bound by the terms of the agreement to which they agreed."); *see also BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 (10th Cir. 2016); ("[I]f the contractual language is unambiguous, the court ascertains the parties' intentions based solely on the contractual language."). Pennsylvania law is no different on this issue. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004); ("When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."); *Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 429, 431 (Pa. Super. Ct. 2014), (affirming dismissal of contract claim where claim was unsupported by the "clear and unambiguous" language of the contract).

*Third*, as a common-sense matter, if the Parties (both of which are sophisticated business entities) intended to create an "exclusive" relationship, they could have and should have done so expressly. For example, they could have used the word "exclusive" (or a similar term) in connection with describing Shopify's "responsibility" under Section 1.E. But they did not. Indeed, the word "exclusive" does not appear in the original Agreement at all, and only appears in

the Second Amending Agreement (executed two years after the original Agreement) to identify the Termination Payment as Plaintiff's exclusive remedy in the event of an early termination under Section 10B (Termination for Convenience). Given the complete lack of exclusivity language in the Agreement, the Court should reject Plaintiff's attempt to conjure such a weighty obligation from thin air.

For all of these reasons, Section 1.E. does not support the existence of any "exclusive" relationship between Plaintiff and Shopify with respect to the offer of discounted USPS domestic shipping rates to Shopify's Clients. To the contrary, the plain language of Section 1.E. makes clear that Shopify did not (and could not) breach the Agreement by offering its Clients discounted USPS domestic rates under Shopify's own NSA with USPS. Accordingly, Plaintiff's breach of contract claim fails as a matter of law.

## II.    Section 2.E. Does Not Support Plaintiff's "Exclusivity"-Premised Theory of Breach.

Recognizing that Section 1.E. does not actually support its exclusivity argument, Plaintiff asserts that the (non-existent) "exclusive relationship becomes clearer when Section 1(E) is viewed in the context of the Agreement as a whole." (Cmplt. ¶ 24.) Plaintiff then offers Section 2.E. of the Agreement as a purported example, stating—without explanation—that it permits Shopify to offer its Clients "competing products and offerings from Competing Resellers, or directly from the USPS, for:  (i) international [USPS] rates, (ii) international USPS rates that include a USPS domestic rate as a component of the international USPS rate, (iii) domestic USPS rates on first class parcels." (*Id.* (citing Agreement § 2.E.).)

Plaintiff's reliance on Section 2.E. to support its exclusivity theory is misplaced. *First*, Section 2.E. does not govern Shopify's obligations under the Agreement. As noted above,

14

Section 1.E. identifies **Shopify's** responsibilities, and Section 2.E. identifies **Plaintiff's** responsibilities.  If the Parties had intended to prohibit Shopify from entering into an NSA of its own with USPS, (i) the Parties could have and should have done so expressly (they did not) and (ii) any such prohibition would have appeared in Section 1 of the Agreement with Shopify's other "responsibilities" (it did not).  The suggestion that the Parties would have put such a prohibition in a section of the Agreement dedicated to setting out Plaintiff's responsibilities makes no sense. "It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole."  *Lenau*, 102 A.3d at 430 (citing *Shehadi v. Ne. Nat'l Bank of Pa.*, 378 A.2d 304, 306 (Pa. 1977)); *see also Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003). ("[W]e consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none.") (citing *WebBank v. Am. Gen. Annuity Serv. Corp*., 54 P.3d 1139, 1144 (Utah 2002)).

*Second*, and equally important, Section 2.E. does not impose back-door obligations on Shopify that do not appear in Section 1.E.  Instead, Section 2.E. merely confirms that, notwithstanding Section 1.E.'s prohibition against Shopify offering its Clients discounted domestic USPS shipping rates from Competing Resellers (excluding Shopify), Plaintiff agrees that no such prohibition applies to other shipping rate categories, including international and domestic first-class parcel shipping.

For at least these reasons, contrary to Plaintiff's vague assertions, Section 2.E. does not support the existence of the "exclusivity" obligations on which Plaintiff's claim depends.

**III.    Section 10B Does Not Support Plaintiff's "Exclusivity"-Premised Theory of Breach.**

Plaintiff also alleges that the Termination for Convenience provision supports the existence of the purported "exclusive" relationship because such a provision "would be unnecessary if no exclusive relationship existed between [Shopify] and [Plaintiff] for offering domestic shipping rates, as [Shopify] could slowly move its domestic volume off of [Plaintiff's] NSA without consequence. (Cmplt. ¶ 31.)  This allegation is nonsense.  The Termination for Convenience provision would apply *without an exclusive relationship* if Shopify decided to terminate the Agreement early under Section 10B so that it could offer its Clients discounted domestic USPS shipping rates *from a Competing Reseller* (if, for example, that Competing Reseller offered better rates than Plaintiff).  In short, like every other provision cited by Plaintiff, the Termination for Convenience provision does not support Plaintiff's "exclusivity"-based theory of breach and, thus, does not provide any support for Plaintiff's fatally deficient breach of contract claim.

<u>CONCLUSION</u>

For the reasons stated above, based on the plain language of the Agreement, Plaintiff has not pled, and cannot plead, any breach of the Agreement by Shopify.  Accordingly, Shopify requests that the Court enter an order (1) dismissing the Complaint with prejudice, (2) awarding Shopify its reasonable attorneys' fees and costs (in an amount to be determined by the Court based on Shopify's post-judgment submissions) as the prevailing party pursuant to Section 15 of the Agreement, and (3) awarding any other relief to Shopify that the Court deems appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 14th day of July 2020.

GOEBEL ANDERSON PC

*/s/ Heidi G. Goebel*
Heidi G. Goebel

KING & SPALDING LLP

Rachael M. Trummel (admitted *pro hac vice*)
Andrew J. Chinsky (admitted *pro hac vice*)

*Attorneys for Defendant Shopify Inc.*

17

## CERTIFICATE OF SERVICE

On this the 14th day of July 2020, I caused a true and correct copy of the foregoing **DEFENDANT SHOPIFY INC.'S MOTION TO DISMISS THE COMPLAINT** to be electronically filed with the Clerk of Court using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

/s/ *Heidi G. Goebel*
Heidi G. Goebel